7 Kan. App. 2d 383 (1982)
642 P.2d 574
RICHARD LEE SPARKS, Appellant,
v.
WICHITA WHITE TRUCK TRAILER CENTER, INC. and GREAT AMERICAN INSURANCE COMPANY, Appellee.
No. 53,633
Court of Appeals of Kansas.
Opinion filed March 25, 1982.
Marvin R. Appling, of Wichita, for the appellant.
Kurt A. Harper, of Sherwood & Hensley, of Wichita, for the appellee.
Before FOTH, C.J., REES and PARKS, JJ.
FOTH, C.J.:
In this workmen's compensation case the only issue is whether claimant timely filed an application for hearing in the office of the director. The assistant director and, on review the director, both held the filing was untimely. The district court agreed and affirmed. Claimant now appeals to this court. We affirm.
The parties stipulated to most of the essential facts. The balance came from the testimony of claimant, the records of the respondent's insurance carrier, and the medical records of a treating physician. There is no dispute as to any of them. The following chronology appears:
 October 23, 1973. Claimant had a work-related accident
*384 resulting in an injury to his lower back, later
 diagnosed as a ruptured disc. Respondent employer
 was notified the same day.
 February 28, 1974. After treatment by the company doctor, on referral
 from his family doctor claimant first visited
 Dr. Donald C. Bailey, an orthopedic surgeon.
 March 13-17, 1974. Claimant was paid five days of temporary total
 disability, $39.76.
 March 23, 1974. Employer's report of accident was filed.
 October 17, 1975. Written claim was filed.
 November 5, 1976-July
 28, 1977. Claimant made five visits to Dr. Bailey, who
 prescribed conservative treatment and tranquilizers
 until the last visit when he recommended surgery.
 Claimant declined. The insurance carrier paid for
 these services as rendered.
 August 18, 1977. The insurance carrier by letter asked claimant to
 call them regarding his claim. In an ensuing
 telephone conversation claimant was given to
 understand the company would pay no more medical
 expenses related to this accident.
 September 15, 1977. The insurance carrier paid for claimant's last
 visit to Dr. Bailey. It had paid before this for
 other medical expenses, including bills for other
 doctors, medicine, and hospital expenses, all
 incurred before July, 1977.
 May 3, 1978. Claimant's wife called Dr. Bailey's office, secured
 a prescription for a pain killer and advice that
 claimant should secure an appointment. He did not
 do so, and did not seek other medical attention,
 because he understood the insurance
*385 company would not pay for it. He paid for the
 prescription; no bill for the doctor's services was
 rendered to anyone.
 November 14, 1979. Claimant filed his application for a hearing with
 the director.
The controlling statute at the time of the accident was K.S.A. 44-510e (Weeks 1973), the pertinent portion of which now appears yn substantially the same form as K.S.A. 44-534(b) (Ensley 1981):
"(b) No proceeding for compensation shall be maintained under the workmen's compensation act unless an application for a hearing is on file in the office of the director within three (3) years of the date of the accident or within two (2) years of the date of the last payment of compensation, whichever is later."
As may be seen, the filing of the application for hearing in 1979 came more than three years after the 1973 accident and more than three years after the 1974 filing of the employer's report. (See Childress v. Childress Painting Co., 226 Kan. 251, 597 P.2d 637 [1979], holding that when the employer's report is filed late, the three years commences when it is filed.)
Claimant, however, relies on the alternative period of limitation, contending his application was filed within two years of "the last payment of compensation." In making this claim he first cites the accepted principle that the furnishing of medical care by an employer to an injured workman is the equivalent of the payment of compensation under the workmen's compensation act. Riedel v. Gage Plumbing & Heating Co., 202 Kan. 538, 449 P.2d 521 (1969); Richardson v. National Refining Co., 136 Kan. 724, 727, 18 P.2d 131 (1933). He then points to Dr. Bailey's prescription of May 3, 1978, as the last "payment of compensation." Since his application for hearing was filed less than two years later it was, he says, timely. Respondent and its carrier argue on the other side that the last "payment" for medical care was made in September, 1977, more than two years before claimant's filing of November, 1979. Dr. Bailey's intervening prescription should not be counted, they say, because it was given without notice to them and was not paid for by them.
As we read the cases, in determining whether medical care is "compensation" under the act neither the fact nor time of payment of the bills is determinative; the issue is whether the *386 medical care was authorized, either expressly or by reasonable implication. If the claimant receives medical care with the reasonable expectation of payment by the employer the care is "compensation" when rendered even though it may never be paid for. Two cases illustrate.
In Johnson v. Skelly Oil Co., 180 Kan. 275, 303 P.2d 172 (1956), the workman while on the job aggravated a tumor on his leg in October, 1953. He promptly sought treatment from the "company doctor," an independent physician compensated on a fee basis. The doctor continued to treat him periodically up to the date of the hearing in 1955. The employer determined the injury was noncompensable and notified the doctor it would not pay his bills under the act in June, 1954. The worker's claim was filed in June, 1955, well beyond the 120 days then allowed. The court held the claim was timely. Once the employer assumed the responsibility of furnishing medical care the workman was entitled to rely on that action; notice of termination to the doctor was not notice to the claimant. In that case it appears the doctor had never been paid for his services, but the furnishing of those services under what appeared to the claimant to be the authority of the employer amounted to "payment of compensation" to the claimant.
In Blake v. Hutchinson Mfg. Co., 213 Kan. 511, 516 P.2d 1008 (1973), the claimant was injured and treated by a doctor who was not the "company doctor" but who was adopted by the employer and insurance carrier as the treating physician. Weekly compensation and his bills for medical services were paid until January 1, 1970, when payments were discontinued without notice. In April of 1970, the claimant called the carrier to discover why the payments had been discontinued. The carrier immediately paid compensation through April 16, 1970. The claimant continued to receive treatment and the bills were sent to the carrier. No further compensation was paid. The additional medical bills were likewise not paid but neither were they rejected. No notice was sent to either doctor or claimant. Upon discovery that the carrier would not pay the claims after April 16, 1970, the claimant filed his claim 223 days after the last payment was made. The carrier defended on the theory that the action was filed 23 days late under the then-existing statute and was therefore barred.
Once again the court rejected the defense, relying on Johnson. The court noted:

*387 "There was never any notice either to the doctor or to the claimant that the authority of Dr. O'Donnell had been revoked. The inference which claimant was entitled to draw from the action of the carrier in complying with his request in April to make further payment of weekly compensation was that of continuing authority for both treatment and referral." 213 Kan. at 513.
The court went on to say that, under Johnson, even if there had been notice to the doctor it would not have been notice to the claimant. In distinguishing two earlier cases the court observed:
"[W]e do not understand either case to say that the employer or its carrier may lull a claimant into a reasonable belief that medical services were being or would be provided, and then after repudiating the obligation plead that the claim was not timely. That, as we see it, was the net effect of the respondents' conduct in this case...." 213 Kan. at 515.
In this case we have the obverse of Johnson and Blake. Here the company notified claimant, who clearly understood no more medical bills would be paid. Whether it ever notified Dr. Bailey does not appear from the record; we assume for our purposes it did not. Thus, unlike the claimants in Johnson and Blake, when this claimant sought further medical care he did not do so with any reasonable expectation that the costs would be covered; his clear understanding was that they would not. In those cases it was held the employer could not start the limitation period running by unilaterally terminating payment of medical bills without notice to the claimant. So here, having been notified that the furnishing of medical services had ceased, claimant could not toll the running of the period by unilaterally securing additional medical services. As we see it, when claimant secured the prescription from Dr. Bailey he was on his own and knew it. The doctor's services, gratuitous or not, were not the "payment of compensation" under the act and did not extend claimant's time to file his application for hearing. See La Fever v. Olson Drilling Co., 142 Kan. 431, 49 P.2d 967 (1935).
Affirmed.